UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| LAURA BARRERA METTING, § § Plaintiff, § VS. § § COMMISSIONER OF SOCIAL § SECURITY, § § Defendant. § | CIVIL ACTION NO. 2:19-CV-00344 |

# MEMORANDUM AND RECOMMENDATION

Plaintiff Laura Barrera Metting filed this action pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security ("the Commissioner") to deny her application for Social Security disability benefits. Now pending are Metting's and the Commissioner's construed[1] cross-motions for summary judgment (D.E. 10, 13). Metting first challenges the Administrative Law Judge's ("ALJ") finding at step three of the sequential evaluation, contending that she has marked limitations in two areas of mental functioning as required to meet or equal an impairment listed in the appendix to the regulations. Second, she challenges the ALJ's finding regarding her residual functional capacity ("RFC") because it was not supported by any medical evidence and did not take her migraines into account. For the reasons discussed further below, it is respectfully recommended that Metting's motion (D.E. 10) be denied, the

---

[1] Neither party labeled their briefing as a motion for summary judgment. However, based on the contents of each brief and the procedural posture of this social security appeal, the undersigned construes them as such.

Commissioner's motion (D.E. 13) be granted, and Metting's cause of action be dismissed.

## I. JURISDICTION

This Court has jurisdiction under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security and venue is appropriate because Metting resides in Nueces County, Texas.  42 U.S.C. § 405(g); 28 U.S.C. § 124(b)(5).

## II. BACKGROUND & ADMINISTRATIVE RECORD

In March 2017, Metting filed an application for disability insurance benefits and supplemental security income, alleging a disability commencing on February 2, 2017. (D.E. 6-6 at 3-20).  Metting claimed that her carpal tunnel syndrome, depression, anxiety, high blood pressure, sciatica, shoulder problems, and migraines limited her ability to work.  (*Id.* at 7).  The Commissioner denied Metting's application both initially and on reconsideration.  (D.E. 6-4 at 23, 61).  In the Disability Determination Explanation at the reconsideration stage, state medical consultant, Dr. Leif Leaf, concluded when analyzing the Paragraph B criteria of the Listings that Metting had moderate limitations in her ability to concentrate, persist, or maintain pace.  (*Id.* at 33-34).  However, when evaluating limitations related to concentration and persistence in the context of Metting's mental RFC, Dr. Leaf concluded that she had a marked limitation in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within standard tolerances, along with a marked limitation in her ability to complete a normal workday or workweek without interruption by psychological symptoms and to perform at a consistent pace. (*Id.* at 56).

Metting requested a hearing before an ALJ. At the November 30, 2018, hearing, she testified to the following. (D.E. 6-3 at 36). Since she became disabled in February 2017, she had suffered from chronic back pain that affected her every day and went into her legs, causing her to limp. (*Id.* at 38-39). Environmental conditions like cold and heat could make the pain worse. (*Id.* at 40). She also had neck pain every day. (*Id.* at 45). She had migraines three times a week that lasted the whole day. (*Id.* at 46-47). When she had a migraine, she took her prescribed medication and tried to sleep in a cold, dark room with cold packs on her head. (*Id.* at 47). However, it was difficult to sleep because the pain made her nauseous. The medication did not help. (*Id.*). Loud noise sometimes helped create a migraine. (*Id.* at 48). When her daughter had people over, Metting put headphones on to cover her ears so she couldn't hear them. (*Id.* at 49). This helped her go to sleep. (*Id.* at 50).

Metting further testified that, due to her anxiety, she did not like being around a lot of people, particularly strangers. (*Id.* at 58-59). She went to her room when her adult children had people over. (*Id.* at 59). When she was physically able to go to the grocery store, she still hurried because she did not like being around people. (*Id.* at 59-60). The anxiety made her depressed and sometimes caused panic attacks. (*Id.* at 60). The pain caused her to have difficulty concentrating and made it difficult to cook or complete other tasks that took too much time. (*Id.* at 63). For the most part, she could take care of herself, shower, and get dressed each day, although she had fallen a few times. (*Id.* at 64-65). About once a week she did not bathe or change out of her sleeping clothes because she had too much pain or was too tired. (*Id.* at 65).

3

On March 6, 2015, Metting visited Dr. Fernando Carreno, complaining of an upper respiratory infection. (D.E. 6-10 at 5). Metting reported that she also had migraines that, when she was on medication, were rare and did not include aura, nausea, vomiting, photophobia, or phonophobia. (*Id.* at 5-6). She also reported controlled anxiety that was moderate to severe, along with severe depression. (*Id.* at 6). These were causing insomnia, irritability, nausea, agoraphobia, obsessive thoughts, fatigue, and impulsive behavior, among other symptoms. (*Id.*). Dr. Carreno prescribed Xanax to treat the anxiety. (*Id.* at 7).

On May 1, 2015, Metting visited Dr. Carreno and reported two days of headaches that were moderate to severe. (*Id.* at 8). They were causing nausea, vomiting, photophobia, phonophobia, and an effect on her social functioning. (*Id.*). At a follow-up appointment on June 28, 2016, Metting reported that she was having migraines a few times a week with a severity of 8/10 that caused nausea and vomiting. (*Id.* at 14). Medication relieved the pain. Metting also reported back pain with a severity of 9/10 that was constant and aggravated by walking, movement, or prolonged sitting. (*Id.*). At a second follow-up on August 15, 2016, Metting reported that migraines were rare when she was on medication and that the pain had a severity of 6/10 with no other symptoms. (*Id.* at 17). She continued to report chronic back pain with a severity of 7/10 that was aggravated by walking, movement, and prolonged sitting. (*Id.* at 17-18). She had prescriptions for butalbital for headaches and Norco for pain relief. (*Id.* at 18).

On October 4, 2016, Metting visited Dr. Carreno reporting moderate anxiety that caused excessive worrying, irritability, sweating, palpitations, hyperventilation, panic

4

attacks, and obsessive thoughts. (*Id.* at 20). She did not report depression. (*Id.*). Metting also reported leg pain with a severity of 8/10 that was aggravated by movement. (*Id.* at 20-21). Dr. Carreno refilled her prescriptions for Norco and Xanax. (*Id.* at 22).

At a November 16, 2016, follow-up appointment for her chronic pain, Metting reported controlled pain in her leg with a severity of 7/10 that was aggravated by moving and walking. (*Id.* at 23). Medication alleviated the pain. Metting also reported controlled anxiety of moderate severity, but she was satisfied with her treatment and had no symptoms. (*Id.*). Dr. Carreno refilled prescriptions for Norco and Xanax. (*Id.* at 24). At a follow-up appointment on December 14, 2016, Metting reported controlled pain in her leg with a severity of 6/10 that was aggravated by walking. (*Id.* at 25). Medication alleviated the pain. Her anxiety was the same as the previous appointment. (*Id.*). Dr. Carreno again refilled her prescriptions. (*Id.* at 27). At a follow-up appointment on January 13, 2017, Metting reported that her leg pain had increased to a severity of 8/10, but otherwise her pain and anxiety were the same. (*Id.* at 28). Dr. Carreno refilled her prescriptions and also prescribed Imitrex for her migraines. (*Id.* at 29).

On January 23, 2017, Metting reported a migraine with a severity of 10/10 that had lasted for five days. (*Id.* at 31). She had taken the butalbital and Imitrex, but had been unable to sleep for four days. (*Id.*). Dr. Carreno referred her to a neurologist and additionally prescribed Maxalt. (*Id.* at 32). At a follow-up on February 10, 2017, Metting reported leg pain with a severity of 7/10 that was aggravated by movement. (*Id.* at 33). Her anxiety remained moderate and controlled. (*Id.*). Her migraines had decreased to intermittent with a severity of 6/10 and she was satisfied with her treatment.

(*Id.* at 33-34). They were nonetheless causing vomiting, nausea, photophobia, phonophobia, and an effect on her social functioning. (*Id.* at 34). Dr. Carreno refilled her Xanax, Norco, and Maxalt prescriptions. (*Id.* at 35).

At an August 10, 2017, follow-up appointment for mixed anxiety and depressive disorder with Dr. Gerald Kizerian, a psychotherapist, Metting reported that she suffered from daily anxiety and depression due to a history of childhood and marital abuse. (D.E. 6-10 at 59, 61). She was sleeping only 4 hours a day. (*Id.* at 61). Dr. Kizerian taught Metting relaxation and breathing exercises to help with her anxiety and depression, referred her to a women's shelter, and provided her with a sleep exercise to help her insomnia. (*Id.*).

On September 18, 2017, Metting had an appointment with Dr. Jimena Cervantes and reported feeling very anxious, which was aggravating her headaches. (D.E. 6-11 at 23, 25). Her back pain was controlled with medication. (*Id.* at 25). She reported no nausea, vomiting, or any other symptoms. (*Id.*). Her prescriptions were refilled. (*Id.* at 26).

On September 19, 2017, Dr. Sharon Rogers, a psychologist, evaluated Metting in relation to her disability claim and found generally appropriate thought content, some slight signs of anxiety, but no other impairments. (D.E. 6-10 at 63-66). Dr. Rogers concluded that Metting's prognosis was fair if she became involved in appropriate mental health treatment and complied with medication requirements. (*Id.* at 66).

On November 21, 2017, Metting had an appointment with Dr. Salsabeal Hassanin and reported worsening back pain that made it difficult to get out of bed or stand for long.

(D.E. 6-11 at 16, 18). She reported overwhelming anxiety the previous weekend that caused pain, dizzy spells, falling, hot and cold flashes, and nausea. (*Id.* at 18). Her prescriptions were refilled. (*Id.* at 19). At a follow-up for chronic back pain, Metting reported back pain that radiated into her neck and caused migraines. (*Id.* at 14). She felt some improvement in her panic disorder. (*Id.* at 14). She was taking tramadol for the back pain and her prescriptions were refilled. (*Id.*).

At several appointments in early 2018, Metting indicated that she sometimes used a cane to ambulate due to her back pain. (*Id.* at 11, 15).

At an August 14, 2018, follow-up appointment with Dr. Elizabeth Kolawole, Metting reported back pain with a severity of 7/10. (*Id.* at 6). She was suffering from anxiety and depression and did not feel that her medication was working. She did not want to go to a women's shelter and have to discuss her abuse again. She was not sleeping well, had decreased concentration, energy, and interest, and did not like being in crowds. Metting's migraines had improved, however, and her last migraine had a severity of 4/10. (*Id.*). Dr. Kolawole refilled her prescriptions, and further prescribed Topamax for her migraines. (*Id.* at 7-8).

On February 21, 2019, the ALJ issued an opinion, concluding that Metting was not under a disability since February 2, 2017. (D.E. 6-3 at 16-28). At the first step of the sequential evaluation process, the ALJ concluded that Metting had not engaged in substantial gainful activity since February 2, 2017. (*Id.* at 18-19).

At the second step, the ALJ concluded that Metting had several severe impairments that limited her ability to perform basic work activities, including: obesity,

7

disc bulge and facet arthropathy of the lumbar spine, cervical spine spondylosis, migraines, rheumatoid arthritis, carpal tunnel syndrome, anxiety disorder (including panic disorder), depressive disorder (including adjustment disorder), and somatic symptom disorder. (*Id.* at 19). However, the ALJ concluded that Metting's hypertension was not a severe impairment. (*Id.*).

At the third step, the ALJ concluded that Metting did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 19-21). Specifically as to Metting's mental impairments, the ALJ noted that, in order to meet the Paragraph B criteria, the mental impairments must result in at least one extreme limitation or two marked limitations in a broad area of functioning. (*Id.* at 20). The ALJ found that Metting had a marked limitation in interacting with others, but only moderate limitations in: (1) understanding, remembering, or applying information; (2) concentrating, persisting, or maintaining pace; and (3) adapting and managing herself. (*Id.* at 20-21). The ALJ noted that the Paragraph B criteria were not the same as the RFC determination, which only applied to steps four and five of the sequential evaluation. (*Id.* at 21).

The ALJ concluded that Metting had the residual functional capacity ("RFC") to perform light work, but she: (1) could only occasionally climb ramps and stairs; (2) could never climb ladders, ropes, or scaffolds; (3) could only occasionally balance, stoop, kneel, crouch, and crawl; (4) could frequently handle and finger; (5) needed to avoid hazards including heights, moving mechanical parts, and operation of motor vehicles; (6) could understand, remember, and carry out only simple instructions; (7) could perform

routine tasks, but not at production-rate pace; (8) should have no contact with the public and only occasional interaction with co-workers; and (9) needed a sit/stand option allowing her to change position at least every hour. (*Id.* at 21).

In reaching this conclusion, the ALJ found that Metting's statements regarding the intensity, persistence, and limiting effects of her physical conditions and migraines were not entirely consistent with the medical and other evidence in the record. (*Id.* at 24). Specifically as to the migraines, the ALJ noted that Metting was taking medication and that the RFC determination included environmental limitations. (*Id.* at 24-25). The ALJ found the state agency physical assessment to not be fully persuasive and concluded that Metting had greater limitations than found in the assessment. (*Id.* at 26). The ALJ found Dr. Leaf's state agency psychological evaluation to be partially persuasive, agreeing that Metting had a marked limitation in interacting with the public. (*Id.* at 26). However, the ALJ found that Metting did not have a marked limitation in her ability to perform activities within a schedule, maintain regular attendance, or complete a normal workday or weekwork, noting that Metting regularly made doctor's visits, took her prescribed medication, and managed her conditions with only modest medication prescribed by her primary medical provider. (*Id.*).

At step four, the ALJ concluded that, based on her RFC, Metting was unable to perform any past relevant work. (*Id.*). However, at step five, the ALJ concluded that, based on her RFC, age, education, and work experience, there were jobs that existed in significant numbers in the national economy that she could perform. (*Id.* at 26-27).

9

Thus, the ALJ concluded that Metting was not under a disability since February 2, 2017. (*Id.* at 27).

The Appeals Council denied Metting's request for review of the ALJ's decision. (*Id.* at 2-4).

## III. DISCUSSION

> *a. Whether substantial evidence supported the ALJ's conclusion that Metting's mental impairments did not meet a Listing requirement*

In her motion for summary judgment, Metting contends that substantial evidence does not support the ALJ's conclusion at step three that her mental impairments did not meet a Listing requirement under 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00(A)(2). (D.E. 10 at 11).[2] Specifically, Metting challenges the ALJ's finding that she only has a moderate limitation in concentrating, persisting, or maintaining pace because Dr. Leaf concluded that she had marked limitation in the ability to perform within a schedule, maintain regular attendance, and be punctual and complete during a normal work day. (*Id.* at 11-12). Metting argues that Dr. Leaf's conclusion is consistent with a disability under the listings for mental disorders because she has a marked limitation in two areas of functioning: interacting with others and concentrating, persisting, or maintaining pace. (*Id.* at 12). Finally, Metting asserts that the ALJ's decision to accord partial weight to Dr. Leaf's opinion is unsupported by any medical opinion and that any inconsistency in Dr. Leaf's opinion falls in her favor. (*Id.* at 12-14).

---

[2] All citations are to the CM/ECF electronic page number, not to the page number at the bottom of the page.

The Commissioner responds that, under the regulations, the ALJ properly considered Dr. Leaf's opinion and was not required to adopt his opinion. (D.E. 13 at 3-4). The Commissioner notes that, when analyzing the broad areas of functioning, Dr. Leaf also concluded that Metting only had a moderate limitation in concentrating, persisting, or maintaining pace. (*Id.* at 5-6). The Commissioner argues that the findings that Metting relies on were part of the RFC analysis, which is a different standard with more specific criteria. (*Id.* at 6-8).

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The burden has been described as more than a scintilla, but lower than a preponderance. *Id.*

In evaluating a disability claim, the Commissioner follows a five-step sequential process to determine whether: (1) the claimant is participating in substantial gainful activity; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform other relevant work. *Martinez v. Chater*, 64 F.3d 172, 173-174 (5th Cir. 1995); 20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof on the first four steps, with the burden shifting to the Commissioner at the fifth step. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

If the ALJ finds that a claimant has a severe mental impairment that does not meet or equal an impairment listed in the appendix to the regulations, the analysis then moves to an RFC assessment. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3). Thus, before going from step three to step four, the ALJ assesses a claimant's RFC. *Perez*, 415 F.3d at 461. RFC "is a determination of the most the claimant can still do despite [her] physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62.

The ALJ has a duty to fully and fairly develop the facts. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). However, the ALJ does not defer or give any specific evidentiary weight to any medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In determining what weight to give each medical opinion or prior administrative medical finding, the ALJ considers several factors, including consistency and supportability. *Id.* The ALJ is not required to adopt any prior administrative medical findings, but must consider that evidence. *Id.* §§ 404.1513a(b)(1), 416.913a(b)(1). Further, the ALJ should not substitute his lay opinion for the medical opinion of experts, especially in cases of mental disability. *Salmond v. Berryhill*, 892 F.3d 812, 818 (5th Cir. 2018).

Paragraph B of the Listing of Impairments for mental disorders provides four areas of mental functioning that are relevant to determining if an applicant is disabled, including: (1) understanding, remembering, or applying information; (2) interacting with

others; (3) concentration, persistence, and maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Part 404, Sub. P, App'x 1 § 12.00(E). In order to satisfy the Paragraph B criteria under the applicable five-point limitation scale, an applicant must have an extreme limitation in one area of mental functioning or marked limitations in two areas of mental functioning. 20 C.F.R. § 12.00(F)(2). For the Paragraph B factors that contain multiple considerations, "the greatest degree of limitation of any part of the area of mental functioning directs the rating of limitation of that whole area of mental functioning." *Id.* § 12.00(F)(3)(f).

Here, substantial evidence supported the ALJ's determination at step three of the sequential evaluation that Metting did not have a mental impairment that met or equaled a listed impairment. Metting's reliance on Dr. Leaf's consultative analysis is insufficient for two reasons. First, the ALJ is not required to give any specific evidentiary weight to any medical opinion or prior administrative medical finding, so the fact that Dr. Leaf concluded that Metting had marked limitations in certain areas of functioning did not control the ALJ's decision. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ considered Dr. Leaf's conclusions, as she was required to, before making her finding. *Id.* §§ 404.1513a(b)(1), 416.913a(b)(1); (D.E. 6-3 at 26).

Second, the ALJ's finding was not inconsistent with Dr. Leaf's conclusions. Regarding the Paragraph B criteria for step three of the sequential evaluation, Dr. Leaf concluded that Metting only had moderate limitations in her ability to concentrate, persist, or maintain pace. (D.E. 6-4 at 33-34). It was only when evaluating more specific criteria under the RFC analysis that Dr. Leaf found some marked limitations in areas of

13

functioning related to concentration, persistence, and maintaining pace. (*Id.* at 56). As the ALJ noted, these specific RFC considerations only come into play after a finding that a claimant does not have an impairment that meets or equals a listed impairment. (D.E. 6-3 at 21). The RFC analysis applies only to the fourth and fifth steps of the sequential evaluation. *Perez*, 415 F.3d at 461; 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3). Accordingly, the regulation that Metting cites regarding "the greatest degree of limitation" in the Paragraph B criteria is inapposite to findings in the RFC analysis because it applies at step three. *See* 20 C.F.R. § 12.00(F)(3)(f).

However, the fact that the ALJ was not required to defer to Dr. Leaf's conclusions does not end the inquiry, as her final RFC finding must nonetheless have been supported by substantial evidence. Contrary to Metting's argument, there is other medical evidence in the record relating to her anxiety and depression beyond Dr. Leaf's opinions that support's the ALJ's findings. In November 2016, Metting reported that her anxiety was controlled with medication and that she was satisfied with her treatment. (D.E. 6-10 at 23). The same was true in December 2016, January 2017, and February 2017. (*Id.* at 25, 28, 33). Consistent with these records, Dr. Rogers concluded following a psychological examination that Metting's prognosis was fair with appropriate treatment and medication. (*Id.* at 66). Further, as the ALJ noted, Metting was able to regularly attend doctor's appointments and take her prescribed medication. (D.E. 6-3 at 26). Standing alone, these facts likely would not be substantial evidence to contradict Dr. Leaf's assessment, but there was other medical evidence supporting the ALJ's finding as well.

While there was also evidence that did not support the ALJ's conclusion, the substantial evidence standard requires only more than a scintilla and less than a preponderance to uphold the ALJ's decision. *Perez*, 415 F.3d at 461. Here, the ALJ's findings regarding Metting's mental impairments were supported by substantial evidence.

### b. *Whether substantial evidence supported the ALJ's RFC determination*

Next, Metting contends that the ALJ's RFC determination was not supported by any medical opinion and the issue should be remanded for further development of the record. (D.E. 10 at 15-16). Further, she argues that the ALJ failed to account for all her symptoms because the RFC determination did not consider her migraines. (*Id.* at 16-17).

The Commissioner responds that there is no requirement of a certain medical opinion that is consistent with the ALJ's RFC finding. (D.E. 13 at 11). Further, the Commissioner argues that there is no requirement that the ALJ include additional non-exertional limitations in the RFC finding due to Metting's migraines. (*Id.* at 12). The Commissioner contends that Metting relies primarily on her own subjective complaints and testimony regarding her migraines rather than medical evidence. (*Id.* at 13).

The lack of a medical source statement regarding a claimant's ability to work does not, in itself, make the record incomplete. *Ripley*, 67 F.3d at 557. Instead, the question is whether substantial evidence in the record supports the ALJ's decision. *Id.* Ultimately, the RFC determination is the sole responsibility of the ALJ, who must consider the medical evidence to draw a conclusion about whether the claimant is able to work. *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012).

Pain can be a disabling condition when it is constant, unremitting, and wholly unresponsive to therapeutic treatment. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (citing *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990)). Thus, the ALJ must make an affirmative finding regarding a claimant's subjective complaints of pain. *Id.* However, where pain can be alleviated by medication, it is not disabling. *Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990).

Here, substantial evidence supported the ALJ's RFC determination regarding Metting's pain and migraines. The ALJ found that Metting's migraines were a severe impairment and was required to consider Metting's subjective complaints of pain. (D.E. 6-3 at 19); *Falco*, 27 F.3d at 163. However, the ALJ did consider Metting's complaints of pain and made the affirmative finding that they were not entirely consistent with the medical and other evidence in the record, noting specifically as to the migraines that Metting was taking medication for them. (D.E. 6-3 at 24-25). The ALJ also stated that the RFC determination included appropriate environmental restrictions that accounted for the migraines. (*Id.*). There is evidence in the record that Metting had strong migraines as early as March 2015, but she reported that they were rare when she was on medication. (D.E. 6-10 at 5-6). The reported severity of the migraines ranged throughout the following years, but Metting generally continued to report that they were rare when on medication. (D.E. 6-10 at 8, 14, 31, 33-34; D.E. 6-11 at 6). Where pain can be alleviated by medication, it is not disabling. *Johnson*, 894 F.2d at 686. Given this evidence, there was substantial evidence in support of the ALJ's conclusion and ultimate RFC

determination, which is the sole responsibility of the ALJ after consideration of the medical evidence. *Taylor*, 706 F.3d at 602-03.

To the extent that Metting raises argument regarding the fact that the ALJ found the state agency medical consultant's physical assessment to not be fully persuasive, the ALJ imposed greater physical limitations than those found in the assessment. (D.E. 6-3 at 26). This decision was in Metting's favor and was supported by substantial evidence in the record, particularly the early 2018 appointments where Metting indicated that she sometimes used a cane to ambulate due to her back pain. (D.E. 6-11 at 11, 15).

Finally, as in the last issue, there is also evidence in the record that contradicts the ALJ's findings regarding Metting's pain and migraines. However, as noted above, the substantial evidence standard requires only more than a scintilla and less than a preponderance to uphold the ALJ's decision. *Perez*, 415 F.3d at 461. Here, the ALJ's RFC findings regarding Metting's pain and migraines were supported by substantial evidence.

## IV.  RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Metting's motion for summary judgment (D.E. 10) be **DENIED**, the Commissioner's motion for summary judgment (D.E. 13) be **GRANTE**D, and Metting's cause of action be **DISMISSED**.

Respectfully submitted this 12th day of June, 2020.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).